ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. CR 11-00800 CRB |
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| TROY KENT, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant TROY KENT to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $6,193 in restitution.  This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

//

U.S.' SENT'G MEMO                                    1
*United States v. Kent*, CR 11-00800 CRB

# BACKGROUND

Defendant Kent is charged with participating in a conspiracy to suppress and restrain competition by rigging bids to obtain selected properties offered at public auctions in San Mateo County from May 2010 through July 2010.  Kent formed a partnership with co-conspirator Laith Salma and purchased properties through their company Triterra, LLC.  Presentence Report ("PSR") ¶ 15.  Salma explained to Kent that a group of bidders at the auction, which included Mo Rezaian, Dan Rosenbledt, Joe Giraudo, Kevin Cullinane, and Ray Grinsell—the "Big 5"—controlled to auction.  *Id.*  This group required other bidders to pay them to stop bidding in order to purchase properties.  *Id.*  Kent and Salma acceded to the group's demands by paying the Big 5 to stop bidding and accepting payoffs from them on numerous properties.  PSR ¶¶ 15-16.

On October 27, 2011, Kent was charged by information with one count of bid rigging and one count of conspiracy to commit mail fraud in San Mateo County.  Dkt. 1.  On February 1, 2012, Kent pleaded guilty and began cooperating with the government's investigation.  Dkt. 7.  On September 19, 2017, by stipulation, Kent withdrew from his original plea agreement and entered a new plea agreement to bid-rigging charges only.  Dkt. 55.

Kent's plea agreement reflects his participation in rigging six properties in San Mateo County and a volume of commerce of $1,032,200.  PSR ¶ 15.  The volume of commerce does not reflect the bid-rigging agreements that Kent participated in for which he received payoff money.  Kent received $6,193 in payoff money for agreeing not to bid on four properties.  *Id.*

# ARGUMENT

## A.    Sentencing Guidelines Calculations

### 1.    Criminal History

In Paragraph 13 of the Plea Agreement, the parties agree that Kent's Criminal History Category is determined by the Court.  The PSR calculates Kent's Criminal History Category as I based on his lack of criminal history.  PSR ¶¶ 33-37.

//

//

//

1

2.      **Offense Level**

2       The PSR calculates the total offense level as 13, consistent with the plea agreement.  PSR

3   ¶ 32.  This calculation includes a one-level increase to the base offense level of 12 for conduct

4   involving the submission of non-competitive bids, a two-level increase for a volume of

5   commerce exceeding $1 million, and a downward reduction of two levels for acceptance of

6   responsibility.  PSR ¶¶ 23-32.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1),

7   2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

8       The parties do not agree as to the applicability of U.S.S.G. §3B1.2(b) (Minor Participant),

9   which would afford Kent an additional two-level decrease in his offense level.  *See* Dkt. 55, ¶ 10.

10  The government believes that Kent is not eligible for this two-level downward adjustment since

11  he is not "substantially less culpable than the average participant in the criminal activity."

12  U.S.S.G. §3B1.2, comment. n. 3(A).  Kent's volume of commerce exceeds $1 million, and he

13  personally profited from the resale of rigged properties and from payoffs, much like many other

14  defendants in the related cases.  *See United States v. Rojas-Millan*, 234 F.3d 464, 472-73 (9th

15  Cir. 2000) (holding that the relevant comparison in determining an adjustment under §3B1.2 is

16  between the defendant's conduct and that of the other participants in the same offense).

17      Kent's conduct in the bid-rigging conspiracy also weighs heavily against his eligibility

18  for a two-level downward adjustment under the Sentencing Guidelines.  *See* U.S.S.G. §3B1.2,

19  cmt. n. 3(C) (outlining a list of non-exhaustive factors a court should consider in determining

20  whether to grant a reduction under §3B1.2).  Kent understood the scope and structure of the

21  criminal activity, rigging six properties, four of which he received payoffs.  Kent also exercised

22  decision making authority at his partnership when he allowed his partner to negotiate bid-rigging

23  agreements on their partnership's behalf.  Kent was always notified whenever Salma made

24  agreements with the Big 5.  Kent also stood to benefit substantially from the bid-rigging

25  conspiracy.  When Kent learned that his partner was also accepting payoffs to stop bidding, he

26  did nothing to stop it.  Although Kent did not originate the conspiracy nor was the biggest real

27  estate investor implicated in it, he was a knowing and willing participant.  *See United States v.*

28  *Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) (once the court has considered all the factors

listed in §3B1.2, it may grant or deny a reduction even if some of the factors weigh toward the opposite result).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3.   Fine and Restitution

The PSR calculates a fine range of $20,000 to $51,610, consistent with the plea agreement.  PSR ¶ 72; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $3,000 and $30,000.  Dkt. 55.  This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.  In conjunction with its custodial recommendation, the government recommends a $3,000 fine.  The government also recommends restitution in the amount of $6,193, consistent with the plea agreement.  *Id.*

## B.   Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation.  The government recommends a 30 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 8 months.

The timing, significance, nature, and extent of Kent's cooperation warrant a 30 percent reduction.  Kent entered his plea agreement pre-indictment on February 1, 2012, over six years ago, and immediately began cooperating in the investigation.  His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Kent provided a candid interview with the FBI in which he produced documents and explained his e-mails that pertained to the conspiracy.  During his interview, Kent provided corroborating information regarding the operation of the conspiracy, in particular, the conduct of the Big 5.  Kent also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.  For these reasons, a 30

//

percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.      Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  The government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Kent's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.  The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders."  U.S.S.G. §2R1.1, cmt. n. 5 & Background.  A fine alone—in the absence of a custodial term—would not serve as an adequate deterrent.  The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.  Kent did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of the defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his minimal criminal history.

//
//
//
//
//
//
//
//

U.S.' SENT'G MEMO                          5
*United States v. Kent*, CR 11-00800 CRB

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Kent to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $6,193 in restitution.

Dated: April 19, 2018                    Respectfully submitted,

                                         /s/
                                         _____
                                         ALBERT B. SAMBAT
                                         Trial Attorney
                                         United States Department of Justice
                                         Antitrust Division